DE LEON v. LEITCH et al.

(District Court, E. D. Louisiana. February 11, 1895.)

No. 13,006.

1. ADMIRALTY—JURISDICTION—BOND FOR SALVAGE.
    Where salved property is delivered by the salvors to the owners, upon their promise to execute a bond for salvage when requested, and such a bond is afterwards given, and dated back to a day before the delivery of the property, a court of admiralty has jurisdiction to entertain a libel in personam on the bond.

2. SALVAGE—AMOUNT OF ALLOWANCE.
    The steamship M., on a voyage from New Orleans to Honduras, struck a reef off the coast of Mexico, and, being in great danger of going to pieces, was abandoned by the crew. On the following day, N. and D. went on board, brought ashore a quantity of specie, guarded it for three days, and then took it on a schooner to meet a steamer bound to Belize, put it on board such steamer, and brought it safely to Belize, incurring in these services considerable expense and considerable hardship and danger. Held, that an allowance to N. and D., as salvage, of one-third of the value of the specie, was proper.

This was a libel in personam by A. C. De Leon, executor of R. S. De Leon, against James Leitch and the firm of Lefebvre, Krug & Oswald, upon a bond given to secure payment of salvage. The bond in question is as follows:

British Honduras.

Articles of agreement entered into at Belize, this eighth day of January, in the year one thousand eight hundred and eighty-nine, between James Michael Norich, of New Orleans, in the United States of America, and Reginald S. De Leon, of Puerto Cortez, in the republic of Honduras, of the one part, and the several persons or firms whose names are hereunto subscribed of the other part: Whereas, the steamship Macgregor, of Glasgow (J. S. Miller, master), having sailed from New Orleans on the 27th day of December last, bound on a voyage thence to Puerto Cortez, via Belize and Livingston, laden with a general cargo, and having on the evening of the 30th day of December, about 9:30 o'clock, accidentally struck on a reef at Ascension Bay, on the Yucatan coast of Mexico, and remaining there fast and immovable, and being in great danger of going to pieces and being abandoned by the crew for the night, and on the 31st day of December being still fast and in danger of breaking up, the parties hereto of the first part went on board the said vessel, and brought ashore a large quantity of specie which was laden on the said vessel, and buried the same in the sand, and guarded the same by day and by night until the third day of January, when they carried the same on board a schooner, and took it out to sea to meet the steamship Wanderer, which was expected to be on her voyage from New Orleans to Belize; and having, on the sixth day of January, fallen in with the said vessel, put the said specie on board of her, and brought it safely to Belize, where they arrived this day; whereby, or in consequence of the premises, the parties hereto of the first part have incurred considerable expenses, disbursements, and charges, and have encountered considerable risks and dangers to their lives, and have been put to considerable hardships and trouble, the amount or value whereof cannot at present be sufficiently ascertained, and which may form a charge on the said specie so saved, or may come under the denomination of salvage to which the said parties hereto of the second part, being respectively owners or consignees, or agents of owners or consignees, of the said specie so saved, may be liable to contribute: Now, these articles witness that, in consideration of the engagements and agreements of the said parties of the second part hereinafter contained, the said James Michael Norich and Reginald S. De Leon engage and agree with each of the said parties of the second part that they shall, and will deliver, or caused to be delivered, as soon as can be conveniently done, at the port of Belize, aforesaid, and on reasonable request, the respective amounts of specie so laden on board the said steamship Macgregor, and so saved belonging or consigned, respectively, unto the several parties of the second part, his or their factors, agents, or assigns, and permit them to receive, take possession, and remove the same according to their respective rights, positions, or ownerships thereof, in consideration whereof the said parties hereto of the second part do hereby for themselves, severally and respectively, and not jointly, personally engage and agree with the said James Michael Norich and Reginald S. De Leon, jointly and severally, to pay, or cause to be paid, unto the said James Michael Norich and Reginald S. De Leon, or unto their executors, administrators, or assigns, their proper and respective proportions of the said salvage in respect of their respective sums of specie so saved, and all legal charges and other expenses to which the said parties of the second part are or shall be respectively liable, or which the said specie ought to bear under the aforesaid circumstances, ratably and in fair proportions, according as the amount and proportions thereof may be ascertained and adjusted by any court of law having competent jurisdiction in the premises, or by private arrangement, among all the parties hereto. In witness whereof, the parties hereto have hereunto set their hands, the day and year first above written.

[Signed]

J. M. Norich.
p. p. R. S. De Leon,
   A. C. De Leon.
Mutric, Arthur & Currie.
Lefebvre, Krug & Oswald.
James Leitch.

W. J. McKinney,
      Actg. Secy. on Behalf of the Government of British Honduras.

W. S. Benedict and R. De Gray, for libelant.

PARLANGE, District Judge.    This is a libel in personam by the testamentary executor of one of two salvors, on a bond given to secure the payment of salvage.    The original libel averred that the specie saved was delivered to the consignees, and that thereafter, the salvors having communicated· with the consignees, the latter signed the bond.    Under such allegations, it may be that libelant could not recover in this court.    Cutler v. Rae, 7 How. 729; Railway Co. v. Swan, 111 U. S. 384, 4 Sup. Ct. 510.    The libel was amended so as to aver that the bond was signed prior to and as a condition of the delivery of the specie.    Subsequently, a further amendment was made to the libel, so as to aver that, prior to the delivery of the specie to the consignees, they agreed to give the bond. I am satisfied that the last amendment sets out the real facts.    The receipts which the consignees gave when they received their specie, state that they agree to sign a bond when called upon to do so.    The bond was doubtless postdated, but I do not see that such action was objectionable, under the circumstances.    The specie was delivered under a written promise to sign a bond, and subsequently the bond was executed by all parties, dating it back to the date of the delivery.    No one complains of this.    Under the allegations of the second amendment to the libel and the facts which support them, the court has jurisdiction.    Coast Wrecking Co. v. Phoenix Ins. Co., 7 Fed. 236; Maury v. Culliford, 10 Fed. 388; The John M. Chambers, 24 Fed. 383; L'Amerique, 35 Fed. 835; Olivari v. Insurance Co., 37 Fed. 894; Sweeney v. Thompson, 39 Fed. 121.    See notes foot of page 166, Ben. Adm. (Ed. 1894).    That a passenger, in a proper ·case, may recover salvage, is settled.    The Connemara, 108 U. S. 353, 2 Sup. Ct. 754.

The total amount of specie saved was about $21,244.    Only two of the consignees who signed the bond are before the court,— James Leitch, for whom $3,700 were saved; and the firm of Lefebvre, Krug & Oswald, for which $1,288.25 in Mexican dollars, worth $950 in American money, were saved.    The services rendered were highly meritorious.    The bond, signed by all the parties, recites that the salvors "have incurred considerable expenses, disbursements, and ·charges, and have encountered considerable risks and dangers to their lives, and have been put to considerable hardships and trouble." Under the circumstances, I consider that an allowance for salvage of one-third of the sums saved is just and proper.    Of course, the libelant can recover 'but one-half of the salvage; the other salvor, Norich, not having sued.    There will therefore be a decree in favor of libelant against James Leitch for one-sixth of $3,700, or $616.66⅔; and against the firm of Lefebvre, Krug & Oswald for one-sixth of $950, or $158.33⅓, and costs.

Let W. B. Schmidt, the attorney in fact of Herman Krug, be notified of the rendition of the decree.